Ernest L. Signorelli, J.
Plaintiff corporation, throughout the years, has been acting in a representative capacity for all of the property owners in a private residential community known as Patchogue Shores. It purports to own the roads, beach and common facilities, and manages and services them for the benfit of all the residents. In order to defray the cost of this service and maintenance, an annual budget is prepared and each property owner is assessed an equal amount. The defendant is one of the residents, and has refused to pay the annual assessments for the years 1964 to date, totalling the sum of $298.10. The defendant did, however, pay the annual assessment the first year he was in residence, and thereafter, for the years following, has refused to make payment. The plaintiff brings this action to recover from the defendant the aforesaid annual assessments which are in arrears.
Apparently, this procedure of collecting service charges for maintenance of the roads, police protection, garbage collection, et cetera, was instituted in the year 1937 by the original developer, Patchogue Shores, Inc., and this practice continued until the year 1942, when it allegedly conveyed to the plaintiff corporation, the streets, beach area and community facilities. The plaintiff corporation continued to follow the same practice of imposing annual charges on the residents. Its board of directors annually prepares a budget which is voted upon by the stockholders and residents of the community, who may or may not be stockholders. The directors sitting on the board are elected to office by the stockholders only. A resident may become a stockholder by purchasing one share of stock for a consideration of $75. A stockholder who has since disposed of his prop *864 erty and moved from the community, but has retained his stock, nevertheless may continue to have a voice in the affairs of the corporation. The defendant in this case is not a stockholder.
In support of its claim, plaintiff essentially relies upon the case of Sea Gate Assn. v. Fleischer (211 N. Y. S. 2d 767) and the more recent case of Tomkins Lakes Estates Assn. v. Speisman(51 Misc 2d 488). The defendant, on the other hand, maintains that these cases are distinguishable from the case at bar for the following reasons: (a) This plaintiff’s certificate of incorporation and its by-laws do not authorize the plaintiff to impose the annual assessments; (b) The deed which the defendant received when he purchased the property does not contain a covenant subjecting his title to rights of control by plaintiff corporation; (c) Defendant is not a stockholder, and can only be a stockholder if he pays a monetary consideration. Plaintiff is in fact a business corporation, whereas, in the Sea Gate and Tomkins cases, the managing corporations were organized pursuant to the Membership Corporations Law; (d) The board of directors consists of nine members as per the by-laws, whereas the certificate of incorporation provides for four directors; (e) Plaintiff does not in reality own the streets, since no reservations were contained in deeds given by the original developer prior to the deed conveying title to the streets et cetera to the plaintiff; (f) The services for which the assessment was imposed were not in fact performed by the plaintiff.
Mr. Justice Di Giovanna, in the Sea Gate case, ruled that it is perfectly legal for a group of property owners in a private community to organize and form a corporation who.se purpose it is to manage and service the roads and community facilities, and impose annual charges on the residents to defray the cost of these services. He predicates his ruling on an implied contract to pay. When an individual, knowing of the private nature of the community purchases a parcel of property, he impliedly consents to pay for the charge imposed for services and maintenance. The physical layout of the community is sufficient notice to the defendant of its private nature. The foregoing arguments are cogently expressed in the Sea Gate opinion on page 781 et seq.
The defendant in this case, however, does not contest the legality of this type of arrangement, providing its corporate structure and table of organization are devised in a fair and proper manner. The defendant states that in the case at bar, *865 because of the aforesaid corporate structural disabilities, the acts of the board of directors were ultra vires.
This argument posed by the defendant is readily rebutted by the general rule that one who seeks to avoid liability on a contract on ultra vires grounds is liable upon an implied contract to restore any benefits derived therefrom. A contract claimed to be ultra vires is binding until rescinded, and the rescission requires restoration. (12 N. Y. Jur., Corporations, § 595.) The plaintiff properly maintains that certain services were performed and that the defendant enjoyed the fruits thereof. Undoubtedly, all or some of these services were performed, in spite of defendant’s contention to the contrary. During the course of the testimony, it was reflected that the budgetary allocation to repair the street on which the defendant lived, was deleted by a vote of those entitled to vote at the annual meeting. The failure of the budget to provide for certain services which the defendant requested, is not the type of complaint which should be raised in this proceeding. The budget herein is prepared for the entire community and the assessment imposed on an individual resident is required to finance this entire budget.
Defendant may conceivably have remedies available to him in a court of equity in a proceeding to enjoin the plaintiff corporation, which remedies I might add, are not available to the defendant in the District Court, because of jurisdictional limitations. Furthermore, if the claim is that the board of directors has acted in an arbitrary and capricious manner, this type of proceeding can be utilized to air such a complaint.
A defense of ultra vires must be pleaded and proven, and the defendant has failed to assert this type of defense in his answer. In any event, an ultra vires defense would only relate to an executory contract, and not with regard to a contract which has been executed.
Accordingly, it is the judgment of this court that the plaintiff has proven and demonstrated a good cause of action for services rendered, and is entitled to recover therefor, the sum of $298.10, together with interest accruing as of the date each annual assessment became due and owing, together with the costs and disbursements of this action.
The motions upon which the court had heretofore reserved decision, and which were inconsistent with the court’s decision herein, are denied with appropriate exceptions.